FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 23, 2018

SEAN F. McAVOY, CLERK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAEL JAY COLEMAN,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  1:17-CV-03024-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 14, 18.  Mr. Coleman seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-1383F.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed.  For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Mr. Coleman's Motion for Summary Judgment.

# I.    Jurisdiction

An application for Supplemental Security Income was filed on behalf of Mr. Coleman, who was then under age 18, on November 28, 2012. AR 204-209. His application was initially denied on September 10, 2013. AR 134-39. On April 2, 2015, Administrative Law Judge ("ALJ") Mary Gallagher Dilley held a hearing in Yakima, Washington.  AR 44-87.  On June 24, 2015, the ALJ issued a decision finding Mr. Coleman ineligible for benefits.  AR 18-39. The Appeals Council denied Mr. Coleman's request for review on December 9, 2016, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner. Mr. Coleman timely filed the present action challenging the denial of benefits, and accordingly, his claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II.    Sequential Evaluation Process

## A. Child Disability Guidelines

The Social Security Administration has established a three-step sequential evaluation process to determine whether a child (an individual under the age of 18) qualifies for disability benefits. 20 C.F.R. § 416.924(a).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 416.972(a). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §

416.972. If the claimant is engaged in substantial activity, he or she is not entitled

to disability benefits. 20 C.F.R. § 416.924(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a medically determinable

impairment that is severe, or combination of impairments that is severe. 20 C.F.R.

§ 416.924(a). A severe impairment is one that has lasted or is expected to last for at

least twelve months, and must be proven by objective medical evidence. 20 C.F.R.

§§ 404.1508-09 & 416.908-09. For an individual who has not attained age 18, a

medically determinable impairment or combinations of impairments is not severe

if it is a slight abnormality or a combination of slight abnormalities that causes no

more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the claimant

does not have a severe impairment, or combination of impairments, the disability

claim is denied, and no further evaluation is required.  Otherwise, the evaluation

proceeds to the third step.

Step three involves a determination of whether the claimant has an

impairment or combination of impairments that "meets, medically equals, or

functionally equals" one of the listed impairments acknowledged by the

Commissioner to be sufficiently severe. 20 C.F.R. § 416.924(a). In making this

determination, the ALJ must consider the combined effect of all medically

determinable impairments, even those that are not severe. 20 C.F.R. § § 416.923;

416.924a(b)(4); 416.926a(a),(c). If the impairment or combination of impairments

meets or equals, or functionally equals one of the listed impairments, and it has

lasted or is expected to last for a continuous period of at least 12 months, the

claimant is presumed disabled and qualifies for benefits. 20 C.F.R. § 416.924(d). If

not, the claimant is not disabled and does not qualify for benefits. *Id.*

In determining whether a claimant's combination of impairments

functionally equals the listings requires an assessment of the claimant's limitations

in six broad areas of functioning called domains. 20 C.F.R. § 416.926a(b)(1). The

six domains for children are: (1) "Acquiring and Using Information," (2)

"Attending and Completing Tasks," (3) "Interacting and Relating with Others," (4)

"Moving About and Manipulating Objects," (5) "Caring for Yourself," and (6)

"Health and Physical Well-being." 20 C.F.R. § 416.926a(b)(1)(i-vi). In making this

assessment, the ALJ must compare how appropriately, effectively, and

independently the claimant performs activities compared to the performance of

other children of the same age who do not have impairments. 20 C.F.R. §

416.926a(b). The claimant's combination of impairments will be found to

functionally equal the listings if the claimant has "marked" limitations in at least

two of the domains or if the claimant has "extreme" limitations in any one of the

six domains. 20 C.F.R. § 416.926a(d).

The claimant will be found to have "marked" limitations when his

combination of impairments seriously interferes with the claimant's ability to

independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).

The claimant's "day-to-day functioning may be seriously limited when [the claimant's] impairment(s) limit only one activity or when the interactive and cumulative effects of [the claimant's] impairment(s) limit several activities." *Id*. A "marked" limitation implies a limitation that is "more than moderate" but "less than extreme." *Id*.

The claimant will be found to have an "extreme" limitation when his combination of impairments very seriously interferes with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). The claimant's "day-to-day functioning may be very seriously limited when [the claimant's] impairment(s) limit only one activity or when the interactive and cumulative effects of [the claimant's] impairment(s) limit several activities." *Id*. An "extreme" limitation means a limitation that is "more than marked." An "extreme" limitation is given to the worst limitations. *Id*.  "However, 'extreme limitation' does not necessarily mean a total lack or loss of ability to function." *Id*.

**B. Adult Standard for Disability**

Mr. Coleman reached age 18 on December 8, 2012. Thus, the ALJ reviewed his eligibility both under child and adult standards of disability.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the

claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.  Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9ᵗʰ Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Mr. Coleman was just shy of 17 years old on the date of his application. AR 204. He reached age 18 on December 8, 2012. *Id.* Before turning 18, the ALJ found Mr. Coleman to suffer

from bipolar disorder, marijuana abuse, and thoracic spine disease. AR 23. Mr. Coleman completed school through the eighth grade, and he has limited reading abilities. AR 48, 51. He is the father of one child. AR 53.

## V.    The ALJ's Findings

The ALJ determined that Mr. Coleman was not disabled under the Social Security Act and denied his application for benefits. AR 18-39.

### A. Childhood Disability Findings

**At step one**, the ALJ found that Mr. Coleman had not engaged in substantial gainful activity since the date of application (citing 20 C.F.R. §§ 416.924(b) and 416.971 *et seq*.). AR 22.

**At step two**, the ALJ found Mr. Coleman had the following severe impairments: bipolar disorder, marijuana abuse, and thoracic spine disease (citing 20 C.F.R. § 416.924(c)). AR 23.

**At step three**, the ALJ found that Mr. Coleman did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1 (citing 20 C.F.R. §§ 416.924, 416.925, and 416.926). *Id*. Additionally, the ALJ found that Mr. Coleman does not have an impairment or combination of impairments that functionally equals the severity of the listings (citing 20 C.F.R. §§ 416.924(d) and 416.926(a)). AR 23-30.

**B. Adult Disability Findings**

**At step one**, the ALJ found that Mr. Coleman had not engaged in substantial gainful activity since the date of application (citing 20 C.F.R. §§ 416.924(b) and 416.971 *et seq.*). AR 22.

**At step two,** the ALJ found Mr. Coleman had not developed any new impairments since reaching age 18 and that he has continued to have severe impairments since reaching age 18. AR 30.

At **step three**, the ALJ found that Mr. Coleman did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 31-32.

At **step four**, the ALJ found Mr. Coleman had the following residual functional capacity: he can perform medium work as defined in 20 C.F.R. § 416.967(b) with the following restrictions: he can occasionally lift and/or carry fifty pounds and frequently twenty-five pounds; he can stand/walk about six hours in an eight hour day with normal breaks and sit about six hours out of an eight hour day with normal breaks; the can frequently climb ladders, ropes, or scaffolds and stoop; he must avoid concentrated exposure to vibration and hazards, such as moving machinery and heights; he can remember simple, repetitive, routine tasks and can perform work without public contact; and he is limited to occasional, superficial contact with coworkers. AR 32-38.

The ALJ also determined that Mr. Coleman has no past relevant work experience and that transferability of job skills is not an issue. AR 38.

At **step five**, the ALJ also found that in light of his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Coleman can perform. AR 35-36. These include: (1) industrial cleaner; (2) laundry worker II; and (3) cleaner II. AR 38-39.

## VI.    Issues for Review

Mr. Coleman argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, Mr. Coleman argues the ALJ erred by: (1) improperly determining Mr. Coleman's severe impairments at step two and in subsequent steps; (2) improperly rejecting Mr. Coleman's symptom testimony as not credible; (3) improperly finding Mr. Coleman not disabled under the Child Disability Guidelines; and (4) improperly weighing the medical and lay witness evidence. ECF No. 14 at 6.

## VII.   Discussion

### A. The ALJ did not err at step and the subsequent steps.

At step two in the sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight

abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

Under step 2, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). A diagnosis from an "acceptable medical source," such as a licensed physician or certified psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 404.1513(d).

Here, the ALJ found Mr. Coleman's bipolar disorder, marijuana abuse, and thoracic spine disease to be severe. AR 23. The ALJ specifically rejected the diagnoses of antisocial personality disorder and intellectual impairment, *id.*, and Mr. Coleman takes issue with multiple diagnoses mentioned in the record that were not discussed in the step two findings, ECF No. 14 at 6.

The ALJ explained that she did not find the diagnosis of antisocial personality disorder to be a medically determinable impairment because it was based on a one-time examination and the assessors were not treating physicians. AR 23. Even if the ALJ should have formally called this impairment severe, it is

harmless because she made clear that all functional limitations were considered, regardless of how they were labeled. AR 23.

With regard to Mr. Coleman's intellectual impairments, the ALJ explained in multiple places in her decision that the IQ scores and related findings were unreliable because of Mr. Coleman's poor effort in testing, as well as the inconsistency with the record. AR 23, 26-27, 35-36. Here, the ALJ also notes that Mr. Coleman's mother testified that he had never been tested for special education in school, which is inconsistent with the low IQ scores. AR 23. The ALJ's reasons for her findings are supported by substantial evidence in the record.

Additionally, Mr. Coleman fails to demonstrate evidence of limitations from the additional diagnoses he references (conduct disorder, intermittent explosive disorder, etc.). A diagnosis itself does not equate to a finding of severity. *Edlund*, 253 F.3d at 1159-60 (plaintiff has the burden of proving this impairment or their symptoms affect her ability to perform basic work activities); *see also Mcleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Finally, Mr. Coleman was found to have at least one severe impairment, and this case was not resolved at step two. Thus, if there was any error in the ALJ's finding at step two, it is harmless, as all impairments, severe and non-severe, were considered in the determination of Mr. Coleman's residual functional capacity. *See Short v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to

consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity).

**B. The ALJ did err in assessing Mr. Coleman's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). When evidence reasonably supports either confirming or

reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Mr. Coleman alleges; however, the ALJ determined that Mr. Coleman's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 32. The ALJ provided multiple clear and convincing reasons for discrediting Mr. Coleman's subjective complaint testimony. AR 32-34.

The ALJ noted that Mr. Coleman's level of treatment was not what would be expected given the alleged severity of his impairments. AR 25. For example, Mr. Coleman's treatment for his back pain was conservative, including the use of over the counter pain medications. AR 281. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

With regard to his mental health treatment, Mr. Coleman admitted to ceasing his antidepressants and antianxiety medications because of the way they made him feel. AR 273. The ALJ noted this indicated "some compliance problems." AR 25.

Yet despite being off medication, he presented with "good spirits" and did "not seem agitated." AR 273. The ALJ reasoned this demonstrated less severe impairments than alleged.

The ALJ also found the record did not support the severity of back impairments alleged. In addition to conservative treatment, the ALJ pointed to mild findings upon examination. AR 25, 271, 273. Again, treatment prescribed was conservative, including physical therapy and home exercises to improve posture and muscle tone. AR 281. Dr. Brent Bingham, D.O., even opined that with this treatment, "much of the pain will disappear." *Id.* This supports the ALJ's conclusion that Mr. Coleman's allegations about his back pain were not as severe as alleged.

The ALJ also relied on Mr. Coleman's own pattern of untruthfulness regarding his substance abuse. An ALJ may rely on the ordinary form of determining credibility and view untruthful behavior. *See Smolen*, 80 F.3d at 1284. For example, Mr. Coleman testified that he has never used drugs or had a problem with drugs or alcohol. AR 52. However, the record clearly demonstrates marijuana abuse, AR 339, 353, which the ALJ even found to be a severe impairment, AR 23. Additionally, Mr. Coleman was arrested for cocaine possession in the eighth grade, and he also has undergone substance abuse treatment. AR 339. These significant

inconsistencies demonstrate untruthfulness, and it was appropriate for the ALJ to consider this.

In sum, the Court does not find the ALJ erred when discounting Mr. Coleman's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

**C. The ALJ did not err when weighing Mr. Coleman's disability under the child disability guidelines.**

As detailed above, the ALJ engages in a three-step process under the child disability guidelines, and the claimant must have an impairment or combination of impairments that result in "marked" limitations in two of the six domains of function or an "extreme" limitation in one of the six. *See supra* at pp. 2-5. Here, the ALJ found neither of these criteria satisfied; therefore, Mr. Coleman was not disabled under the child disability guidelines. AR 23-30. Mr. Coleman argues that this was in error, specifically with regard to Domains 1, 2, and 3. ECF No. 18 at 15.

Domain 1 addresses a child's ability to acquire and use information. The ALJ found that Mr. Coleman had less than marked limitations in this area. AR 26-27. The ALJ relied significantly on the findings of Dr. Christy Ulleland, M.D., who reviewed Mr. Coleman's records and found him to have no limitations in this area, and she specifically noted that the IQ scores determined by Dr. Thomas Genthe,

Ph.D., were likely invalid due to Mr. Coleman's "well-formulated" activities of daily living. AR 26, 114. As noted prior, the ALJ explained in multiple places in the record that she did not find these testing scores, including IQ, to be valid. AR 23, 26-27, 35-36. The ALJ also supported her finding with regard to Domain 1 by pointing to the December 2011 assessment by Central Washington Comprehensive Mental Health that found Mr. Coleman's thought process was "linear, logical, and goal directed." AR 26, 262.

Domain 2 addresses a child's ability to attend and complete tasks. Again, the ALJ found less than marked limitations in this area. AR 27. The ALJ referred to examination findings that Mr. Coleman maintained appropriate eye contact, his insight was fair, and his thought process was linear, logical, and goal directed. AR 27, 262. While Dr. Ulleland did note some evidence of Mr. Coleman's inability to maintain attention and concentrate, she did not find this inability to rise to represent marked limitations. AR 115.

The third and final challenged area is Domain 3, which addresses a child's ability to interact and relate with others. The ALJ found less than marked limitations in this area. AR 28. This is one finding in which the ALJ parts views with Dr. Ulleland, who did find marked limitations, citing to threats on his adopted mother's life, legal problems involving drug dealing, and probation for harassment. AR 115. The ALJ does address numerous problems "related to behavioral and

relational issues," including Mr. Coleman's legal problems, fights at school, other aggressive behavior, and drug abuse. AR 28. Other than noting that the State assessor did not find any limitations in this area at an initial assessment, the ALJ does not adequately explain why she rejects Dr. Ulleland's findings or how Mr. Coleman's significant history of behavioral issues is not relevant to the ALJ's own findings.

Regardless, any error in Domain 3 would be harmless because the child disability guidelines require a finding of marked limitations in at least two of the six domains. 20 C.F.R. § 416.926a(d). Mr. Coleman does not challenge the ALJ's findings regarding Domains 4-6, and the Court has already upheld the ALJ's findings regarding Domains 1-2. *See supra* at 18-19. In sum, the ALJ's finding that Mr. Coleman was not disabled under the child disability guidelines is supported by the record.

**D. The ALJ did not improperly weigh the medical and lay witness evidence.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those

who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. Furthermore, generally more weight is given to the opinion of a specialist about medical issues related to his or her area of specialty. 20 CFR § 416.927(c)(2)(5). In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### a. Dr. Genthe

Dr. Genthe performed a psychological evaluation on Mr. Coleman on March 14, 2013. AR 319-29. In addition to interviewing Mr. Coleman, Dr. Genthe performed cognitive testing. AR 319. Dr. Genthe found Mr. Coleman to present as "generally open, cooperative, and friendly." AR 328. He also found that Mr. Coleman was "quick to give up" and had to be repeatedly motivated during testing. AR 328-29. As a result, Dr. Genthe stated that the results obtained in the testing were "unlikely a reflection of his true abilities." AR 329. These unreliable test scores were a significant factor in the ALJ's reasons for giving Dr. Genthe's opinion little weight, and this reason is strongly supported by the record. The mental status examination performed by Dr. Genthe was also inconsistent with the testing scores and his opinion generally. AR 36, 322-28. These inconsistencies were a valid reason to devalue Dr. Genthe's opinion. *Tommasetti,* 533 F.3d at 1041.

### b. Dr. Kouzes

Dr. Jan Kouzes, Ed.D., performed an evaluation of Mr. Coleman on March 18, 2013. AR 367-72. Dr. Kouzes opined multiple marked limitations in a check-box format. AR 369. Despite these limitations, the ALJ pointed to a mental status examination that did not demonstrate significant issues. AR 37, 370-72. An ALJ is

not required to accept a brief, conclusory opinion when it is unsupported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Moreover, Dr. Kouzes relied heavily on Mr. Coleman's subjective testimony, which the Court has already found the ALJ properly discredited. *See supra* 15-18. Dr. Kouzes was not even aware of Mr. Coleman's substance abuse, as there is no finding of marijuana or substance use and in fact, Mr. Coleman told Dr. Kouzes that he had never used drugs, AR 368, which is strongly rebutted by the record. An ALJ may discount an opinion that is largely based on subjective testimony that has been properly found to be unreliable. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

### c. Dr. Johansen

Dr. Steven Johansen, Ph.D., reviewed the medical reports of Drs. Genthe and Kouzes, as well as providers at Central Washington Comprehensive Mental Health, on June 21, 2013. AR 389. Dr. Johansen's opinion was directly contradictory to that of Dr. Janis Lewis, Ph.D., who also performed a review of medical evidence. AR 372, 389. He stated that cognitive deficits were chronic, but he also noted the inconsistent reporting of substance abuse. AR 389. The ALJ gave less weight to this opinion again because it was based in part on unreliable information, particularly related to substance use. AR 36. Dr. Johansen even acknowledged this: he stated that an "evaluation with reliable collateral

information should be considered." AR 389. When this unreliability is considered in light of the conflicting reports of the reviewing professionals, it was not unreasonable for the ALJ to give the opinion less weight.

### d. Colleen Coleman

Mr. Coleman's mother, Colleen Coleman, testified at the hearing to Mr. Coleman's memory issue and that he was easily frustrated and experienced periods of rage. AR 69-80. Ms. Coleman's testimony would be considered "other source." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

The ALJ explained that she gave partial weight to Ms. Coleman's testimony because the limitations described are not at the disabling level. AR 34. The ALJ noted Mr. Coleman's minimal treatment, *see supra* at pp. 16-17, as well as the history of mental status examinations within normal limits, *see, e.g.* 322-28, 370-

72. These are sufficient germane reasons for the ALJ's determination regarding Ms. Coleman's testimony, and the Court finds no error.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and not free of legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 18,** is **GRANTED.**

3. **Judgment shall be entered for Defendant** and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **CLOSE the file**.

**DATED** this 23rd day of February, 2018.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge
